185485, James Randy Williams v. Graphic Packaging Intl, Arguments not to exceed 15 minutes per side, Mr. Durham for the appellant. Thank you. May it please the Court, Your Honor, my name is Ryan Durham, along with Cameron Hoffmeyer, we represent the appellant in this matter. I would like to reserve 5 minutes for rebuttal, please. With Your Honor's permission, and I thank you for the accommodation, I will remain seated for my argument. Certainly thank you for that. Your Honors, the questions raised in this appeal are answered by the application of the proper summary judgment standard. We submit to Your Honors that the trial court applied an incorrect standard when ruling on the appellee's motion for summary judgment. Were the trial court reviewing a jury verdict to see if the evidence warranted the finding by the jury? The trial court's ruling may very well be appropriate. However, that's not what we're here on. That's not what was before the trial court. The trial court was viewing a motion for summary judgment where we submit there were numerous disputed facts, and we submit that the trial court weighed the evidence, ascertained issues of credibility, and ultimately made a decision that was not supported by the summary judgment standard under Rule 56. Much like this court's case last year in Hustetler, the trial court did not follow the proper standard, and that's what brings us here today. Specifically, our brief outlines numerous discrepancies that we believe the facts established that call into question the very credibility of the investigation upon which GPI, graphic packaging, seeks to rely in its termination of Mr. Williams. But those questions raise questions for the jury, not for the trial court sitting in summary judgment fashion. I would like to call your honor's attention to a few of those questions that we believe the facts raise for which GPI does not have a legitimate non-discriminatory answer. The first of those would be the performance reviews. The record is clear that Mr. Williams was the subject of numerous performance reviews. And each and every one of those reviews were positive. Each and every one of those reviews were broken into two categories. One that you might think would be more along the lines of how well his floor was running, how well they were doing with the business aspects. The other part, which was incredibly important to GPI as they testified, was evaluating based upon the core principles or these core values that GPI put out for all of its employees to follow. Every one of those reviews illustrated that Mr. Williams was what they call modeling or walking the talk. Good reviews in each one of those categories, those core values for which they now say or have contended they terminated in Mr. Williams' floor. Interestingly, as it relates to those performance reviews, the HR manager, Mr. Flatt, when he was conducting his investigation or what he phrased as an investigation, he emailed an HR superior, one link up the chain from him, to say, oh, by the way, these performance reviews were below par or Mr. Williams scored below par on his performance reviews. Not the case at all. Well, let me ask you about a couple of the manager's comments on those reviews. Yes, Your Honor. I understand the rating numbers. He wasn't at the top, but he wasn't at the bottom either. He was in the middle. But I'm seeing things with, here's an example. In your direct report, say there's no need in disagreeing with you because you are always right. You have told me you can't stand being wrong, which validates your statements. It's okay to be wrong. Let others be right. And then goes on with another example that you assume the worst because you read too much into what is said by me or others. I realize you're working on this. It's hard to hold people accountable and maintain a relationship, but it can be done with the right approach. And then a later one, here's a word of caution. Your associates know you don't like to be wrong, and they know it hurts bad when you are wrong. This leaves the perception at times that they can't express their ideas to you without being shot down because you are always right. Wouldn't you say that that might not be quite up to par, statements by management that suggest that there is a communications problem with his employees? Those were certainly issues that had been raised in previous reviews, your honor. There's no doubt about that. If you look, though, at subsequent reviews, including the one only two weeks before going out on family medical leave, there were comments made by that same reviewer, Mr. Lee, the plant manager, who ultimately made the decision to terminate Mr. Williams, that it had been a great year in all respects, except for those two injuries. And there are other comments where Mr. Lee says, and I'm paraphrasing because the exact language won't come to me at the moment, but you're doing better working with other people. So there's improvement along the line. Does that improvement stay if you consider that while he was out, reports were made by his subordinates that suggest that he was not communicating appropriately, and that then he concedes that in his deposition? I would suggest, or I think that what he concedes in his deposition is that he had communication problems. Whether there were allegations made while he was out on leave or struggles that were brought to someone's attention while he was out on leave, I believe that's a contested fact and something that the jury could weigh as in Mr. Williams' favor or as in Graphic's favor. Because the only allegations that supposedly came out while he was on leave were from Miss Pack, the person who ultimately took his job or took the position that was vacated by his termination. What about the gentleman who said that he had hated to come to work for four years, but he had to support his family? That was not Miss Pack. No, but that was not made, those were not allegations or information that was brought to anyone's attention, we believe the facts show, while Mr. Williams was on leave. Or during the investigation that followed Miss Pack's, the provision by Miss Pack of the information and her concerns? There were absolutely employees who dealt differently and some bit of, perhaps, offended by Mr. Williams' strictness. But all of those employees also testified to the fact that his strictness was work-related and that his criticism was warranted. Mr. Williams, Sandy Williams, even testified that he knew it was all work-related. He took no offense by it, and the relationship was a positive one, or one that was effective in the workplace. I won't go quite as far as to say a positive one, but one that was effective in the workplace. His position was one that we believe the record establishes. He came to the plant when it was in a bad way, in certain respects, and that it needed a mustering. And he provided that mustering, and that his strictness was a part of that. We think that the performance reviews were, I would suggest to your honor that the grading is such that if Mr. Lee, as the person conducting the evaluation, with the input of those subordinates all along the way, if he viewed them to be below par, while he certainly wrote constructive criticism, if he viewed them to be below par, he would have scored them accordingly. I would submit he didn't view them to be below par. It was Mr. Flatt who characterized them as below par, not Mr. Lee. The facts were such that if you look at Mr. Flatt's comments about interviewing, he never interviewed. He said he did in his report, but later when asked in his deposition, he said, I never interviewed anybody. But then he goes on in the next sentence to say, this is what I asked. Well, what he asked, your honor, was also- It is true, your honor. That clearly qualifies the, I mean, you can interview somebody by asking one question, under some meaning of the term interview, but I'm not seeing how that, that was one that puzzled me in your argument. At first, I thought, there's a conflict in between those two statements, but in context, it's not really a conflict at all. He just, when he said, oh, I want to make clear that I didn't interview them. But in the very next sentence, he says, I just asked them this question. Well, that's- His question- Some people do- It seems like it's a semantical issue. Yeah, I guess that's what I'm saying. I'm sorry, your honor, did you say it's semantical? Yes, it seems like it's a semantical issue. I understand your thought process there, your honor. I would submit, though, that in context with the other ways he phrased in the report, talking to people, that it never happened. And it was his own word in his deposition where he said, I didn't interview anybody. I understand. You have your rebuttal time. Thank you, your honor. Good morning. My name is Chris Anderson. I'm here on behalf of Graphic Packaging International. Despite plaintiff's valiant and somewhat creative effort to manufacture issues of fact, he does not establish pretext. A GPI, Graphic Packaging, made a reasonably informed and considered decision to terminate Mr. Williams after an investigation revealed particularized facts that he violated the company's core values. A plaintiff also fails to identify any similarly situated individuals who were treated more favorably. And plaintiff does not put forth any credible evidence to establish that illegal discrimination was more likely the reason for his termination than the proffered reason. As this court well knows, there are three primary methods by which plaintiffs can establish pretext. The first method is to show that the proffered reason has no basis in fact. The second method is to show that the proffered reason was insufficient to motivate the decision to terminate. And the third method is to show that the proffered reason doesn't warrant or justify the termination. As far as the first method, plaintiff has not put forth any credible evidence to create an issue of fact to show that the proffered reason has no basis in fact because Graphic Packaging had an honest belief based on its investigation that Mr. Williams committed or violated the company's code or core values. Excuse me. So let's talk about the investigation. This court has said on numerous occasions that investigations in order to establish or for employers to rely on the honest belief defense, those investigations don't have to be perfect. They don't have to be optimal. They don't have to be so comprehensive so as to leave no stone unturned. The only standard by which this court views those investigations is that they can't commit errors so egregious or so obvious that those errors could not be unintentional. We simply don't have that here, Your Honor. Counsel, let me tell you what the main concern I have with your argument. I'm not sure it's dispositive but it's the main one and then you can address it. It's a little bit suspicious on the surface that all of the complaints all coalesce at one point in time and at that point in time he's just coming off of this extended leave, all right? So it looks a little, if that's all you say, it looks a little suspicious. Your answer to that and the company's answer to that is there's a reason for that and that is that that's when it was first drawn to their attention because of his leave. And that's certainly plausible. Why isn't that fundamental difference a jury issue? I mean, it's just like, well, all of this happened at one time for this reason or it all happened at one time for this other reason. That sounds like something we would give to a jury. That's my question. Yes, Your Honor, I understand your suspicion surrounding that set of facts. But that doesn't create... That isn't my suspicion. It's whether there's sufficient evidence that no reasonable juror or whatever the standard is, there's no genuine issue of material fact with respect to the one narrative versus the other. There's two narratives basically, right? One narrative is all of a sudden when they did something that was protected, all this stuff gets trotted out. The other narrative is it was all discovered as a result of that absence, all right? I think the answer... I'm not saying I'm suspicious. I'm saying why isn't that present a factual issue under the summary judgment standard? Your Honor, I think that's likened almost to sort of a temporal proximity issue. Temporal proximity alone doesn't establish anything. There has to be some sort of discriminatory animus or proof put forth that GPI had some discriminatory intent based upon either Mr. Williams taking leave or his medical condition or something to that effect. Plaintiffs have put forth no proof beyond the fact that they have issues with the investigation and I think as Judge Gibbons pointed out, we consider those to be frankly nitpicking semantical arguments. But there's been no proof to suggest anything other than what actually happened, which was Mr. Williams... I don't know if you can say it's not strong enough, but there's a pretty strong inference that you might be able to draw from the timing. I agree, Your Honor. Something happens and then all of a sudden they have all these problems with him. But that doesn't create a material issue effect. That alone... Is it your position, and I mean I think it must be, it'd be my position, that our case law on the point of temporal proximity is sufficient to tell us that that is not a jury issue but rather can be resolved by the court by determining whether anything exists in addition to temporal proximity? That's absolutely correct, Your Honor. There has to be more than temporal proximity in order to establish... Well, sometimes temporal proximity is enough. It is enough for a prima facie case, that's correct. But if the employer puts forth a legitimate non-discriminatory reason, temporal proximity does not establish pretext. Actually, I'd say that temporal proximity... The case law is frankly less... It's helpful but sometimes not helpful. We've sort of gotten... It's like you can find anything you want to find in our case law. I would agree with that. But I would say that temporal proximity is not sufficient but that temporal proximity plus an absence of... Well, it's really never just temporal proximity. It's temporal proximity plus whatever else you've got in the record. Exactly. And all we have here... And if you had temporal proximity plus no other possible reason that was based on evidence in the record, then maybe that's a jury question. Exactly. So, if you have temporal proximity without a legitimate non-discriminatory reason alone, that could create a factual issue. Here, what happened was, Your Honor, is that Mr. Williams goes out on leave and he had such a hold on these employees, out of fear and intimidation, they were scared to death to approach their superior with these complaints. Once Mr. Williams... Isn't there a dispute as to that? That's what I'm asking. I understand that as an explanation. No, there's no dispute. It's a pretty powerful explanation, but I'm not sure that that's just based on testimony that a jury could believe or not, given the temporal proximity. Well, plaintiffs have put forth no proof to dispute that. There have been... He didn't testify himself? He has not contested the truth of the allegations against him. There has been virtually no proof. He was deposed? He was, Your Honor. And he admitted the allegations? He admitted much of the conduct for which he was terminated. For instance, he admitted that he told employees that he owned them. He admitted that he... The issue is not so much whether he did it as to whether it was because he was away that it didn't occur to the company to act on it. That's the argument that you have to accept, right? I understand that. If you don't accept that argument, you kind of have a genuine issue of material fact. The question is whether you accept that argument. And I'm just wondering whether we have to say that there was no genuine issue of material fact as to that argument. Not that he do these bad things. You're right. He admits he did a lot of those bad things that are arguably inconsistent with the core of things. But I guess, I mean, I understand your argument, but it seems like at some point it's fact-based. And that's, I guess, we can look at his deposition. Well, it's fact-based, Your Honor, primarily because there's no proof to dispute those facts. Well, there are three ways to get there. You can say pretext is because there's no basis in fact, and I think the admissions and the deposition take care of that. The second one is that it didn't actually motivate this action. And the third one is it's insufficient to warrant the action. It seems like one and three. It was sufficient to warrant the action. There isn't a, he isn't denying that he did those things. So the real question is, we're in number two. Did it, did it, it didn't actually motivate the action. And your response to that is the honest belief. Is that correct? My response actually to that would be there are no similarly situated individuals who are treated more favorably. Typically how this court... Well they point out that some of the very things he did, other people did those also and were not disciplined. They do, Your Honor, and we disagree with that. Well, Ms. Pack, Ms. Pack spread this inappropriate sexual rumor, right? It was not punished. Not in the same context as Mr. Williams. Ms. Pack did not divulge the rumor to a subordinate, to a direct subordinate, as Mr. Williams did. Mr. Williams actually called Ms. Pack to disclose the rumor to her under the auspice of what he should do. He never once, during that phone conversation, did he discredit the rumor? Not once did he, and we're talking about a vile, reprehensible rumor. I can't think of any more nasty rumors or examples of a nasty rumor than this. But he calls his subordinate... And it was not related to workplace conduct. It was not, Your Honor. It was something that supposedly happened years ago. He calls his direct subordinate to divulge this rumor to her under the auspice of what should we do with this. The way she took it, that she testified, the way she took it was it was an attempt to spread the rumor to her to undermine the plant manager, Eddie Lee. And of course, when Mr. Lee finds out that Mr. Williams had divulged this rumor, he took it very personally and took it as a blatant attempt to undermine his authority, and of course reacted emotionally. Did Mr. Williams create the rumor, allegedly? No, Your Honor. It was, indeed, a rumor? It was a rumor. There's some dispute as to how widespread the rumor was. Mr. Williams found out about the rumor through a production employee by the name of Doyce Elkins. You told him about it? Yes. You told him about it? Mr. Elkins told him about the rumor. And rather than, as the second-in-command, right-hand person of the plant manager, rather than go to Corporate Human Resources or someone else, he calls his direct subordinate and divulges the rumor to her, outside of work hours on the telephone. But to answer your question, Judge Stranch, the plaintiff has not put forth any similarly situated individuals, both who have engaged in the same conduct or who have the same title role and responsibility. The plaintiff has put forth Ms. Hunt and Ms. Pack as similarly situated individuals. And while they may have, and it's disputed whether or not they engaged in the same conduct in terms of cheating on a safety exam as Ms. Hunt or divulging the rumor to a subordinate, as alleged, done by Ms. Pack, neither of them were accused of mistreating their subordinates by humiliation, embarrassment, and abusive conduct. So they are not similarly situated because they simply did not engage in the same conduct with the same frequency and severity as Mr. Williams. They were not at the same level, he was. That's right. That's right. And the other component of that analysis is, of course, that they have to have the same or similar title role and responsibilities. One, Ms. Pack actually reported to Mr. Williams. Ms. Hunt reported to another manager. There were only two managers in the plant. Their responsibilities differed greatly between, with Mr. Williams. Mr. Hunt, I mean Ms. Hunt and Ms. Pack were production supervisors. They were over one aspect of a line. They were essentially over a part of the production process. Mr. Williams was over an entire half of the plant. Many lines were within his authority. So they are not similarly situated, but for, they may have been disputed, may have engaged in some conduct. Well, that's not the only way you could show that something different motivated the action, right? Something. I'm not sure I understand your question. The question is, did the violation of the core values actually motivate the action? And you're saying, well, these are not comparators, but what I'm asking you is, there are situations in which there is evidence that the action was motivated by something different when you really don't have the comparator. Their comparators are strong evidence, but so could some other statement. The question is, is there any dispute of material fact that might relate to this honest belief claim? Why do you think that there's not any dispute that this was an honest belief of the deciding making body, which was the group that spoke on the telephone? Because I think the investigation conducted by GPI to develop and discover these particular odds facts upon which they based their decision was more than reasonable and more than passes the muster that this court has set forth for such investigations. Again, the investigation didn't have to be optimal. It didn't have to be so comprehensive so as to leave no stone unturned. If you take plaintiff's argument, that's essentially the standard they're imposing upon GPI's investigation. It had to be perfect. Just reviewing their arguments and the semantical nitpicking that they make with the investigation report's word choice, in essence, if you take their argument to its extreme, any mistake made by an investigator for an employer could impute discriminatory intent and would undermine the honest belief rule. Thank you, Your Honor. Thank you, Your Honor. It is very much in dispute. We believe in the record that the actions or this stronghold that counsel says Mr. Williams had over his subordinates was even there. As Your Honor, Judge Stranch, mentioned earlier in your review of some of the comments in the reviews, clearly subordinates were involved in the review process. So when Mr. Lee would conduct a review, it included input from those subordinates. And those reviews, while definitely saying what Your Honor said, also included things like you make the effort to get the full story from others. You have good progress in this area, and that's related to holding people accountable. I can see a difference in the way you . . . There are some small differences there. Help me, give me your best argument for why, in light of what the plaintiff has admitted his conduct is, what is your best argument that there is a true dispute of fact as to whether the company was actually motivated by this? I don't think it's accurate to say that he admitted to being overbearing or having a stronghold . . . Yeah. Well, yeah, but we've read through. I mean, I just think it would be hard to quibble with, when he has admitted, I told people I owned them, you know, you have the . . . there's just a whole list of things that purportedly were unknown to the company. So I'm just asking you, give me your best shot. Why is it that honest belief is truly a dispute of fact here? I think first, Your Honor, it is disputed the very essence of the stronghold. I think it is. I think that the honest belief requires that the decision maker not know about the inherent problems with the investigation, about how the investigation was created and established for the purpose of coming to the conclusion that Mr. Lee wanted it to come to. He was the decision maker. He was involved in the investigation. Well, and I'm sorry, but he's the guy that the rumor was about. And if he had an honest belief that that was wholly inappropriate and he could not work with this man anymore, that's different from discriminating against him because of his medical problems. So help make your case connection. Explain to me what that is. The rumor, at least based upon the deposition testimony from both Mr. Lee and Mr. Flatt, was that the rumor is what began, was the impetus for looking into what was going on. But by the time the investigation was over, the rumor was at the bottom of the page at the end of the investigation under ONO, by the way. But really, the rumor and its connection to Mr. Williams is, I think, being overstated. The rumor, the record established, well predated Mr. Williams even being at the plant. And it. Excuse me, but if he was fired because of the rumor, then you wouldn't have a lawsuit against him because he wouldn't have been fired on a prohibited basis, right? You're right, Your Honor. And we don't submit that he was, we don't believe that he was fired because of the rumor. The rumor was just an excuse to put in the report, just as was the so-called manipulation and threats, just as was the cheating that in the report said happened numerous times a year and mishunt the other person involved who was not punished. What's your best evidence for connection to his disability? Conversations that he and Mr. Lee had repetitively where Mr. Lee, in dispute, asks over and over about his treatment, over and over about his medication, over and over about his family history. That was all before he was granted leave, though, right? Before they knew the other information? It was all before they were granted, before he was granted leave. It was right up until the time of granting leave, including Mr. Lee saying things like your medication makes you, quote, paranoid as hell. That's the connection. Then you couple that with the fact that he has a conversation with the other managers after Mr. Williams is terminated and says, now, don't talk about this, but this was not because of his health. This was because of other job-related activities. We thank you very much. Thanks to both of you for your argument, and we'll consider the case carefully. Thank you, Your Honor. The other cases being on the brief this morning, we will adjourn. You may adjourn court. This Honorable Court now stands adjourned.